24CA0425 Peo in Interest of AHG 10-17-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0425
City and County of Denver Juvenile Court No. 22JV30567
Honorable Elizabeth Beckers Strobel, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.H.G., a Child,

and Concerning S.M.H.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

---

Kerry C. Tipper, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, S.M.H. (mother) appeals the judgment terminating her parent-child legal relationship with A.H.G. (the child).  We affirm.

## I.    Background

¶ 2    In September 2022, the Denver County Department of Human Services filed a petition in dependency and neglect regarding the then-six-year-old child.  The Department alleged concerns about mother's substance use and the child's exposure to guns and violence.  The juvenile court granted temporary legal custody to the Department, and the child was placed with her paternal grandmother.

¶ 3    After mother entered an admission to the petition, the juvenile court adjudicated the child dependent or neglected.  The court adopted a treatment plan requiring mother to engage in substance abuse treatment, cooperate with the Department, attend supervised family time, and develop stability.

¶ 4    The Department later filed a motion to terminate mother's parental rights.  After two continuances, the juvenile court held a contested termination hearing and granted the Department's motion.

## II.     Discussion

¶ 5     Mother's sole contention on appeal is that the juvenile court erred by finding that she could not become fit within a reasonable amount of time.  We discern no error.

### A.     Standard of Review

¶ 6     Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  We review a court's factual findings for clear error, but we review de novo the court's legal conclusions based on those facts.  *Id.*

¶ 7     The credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from it, are within a juvenile court's province.  *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 10.  We cannot reweigh the evidence or substitute our judgment for that of the court.  *Id.* at ¶ 29.

### B.     Applicable Law

¶ 8     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated

2

dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 9     An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *S.Z.S.*, ¶ 23. "Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs." *S.R.N.J-S.*, ¶ 9. A parent's noncompliance with a treatment plan generally may also be considered in determining unfitness. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 10     A parent must have a reasonable amount of time to work on a treatment plan before a juvenile court terminates her parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). But a reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *S.Z.S.*, ¶ 24. Periods as short as five to nine months have been held to be sufficient to comply with a

treatment plan. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 11 The determination of a reasonable period is necessarily fact specific, and thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. *D.Y.*, 176 P.3d at 876. In determining whether a parent's conduct or condition is likely to change and whether the parent can become fit in a reasonable time, the juvenile court may consider the chronic or long-term nature of the parent's conduct or condition and whether any change occurred during the dependency and neglect proceeding. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006).

### C. Analysis

¶ 12 The juvenile court found that mother had "been using drugs for years" and that she continued to use substances during her pregnancy with the child's younger sibling, whose umbilical cord tested positive for methamphetamine and fentanyl in November 2023. The court found that mother "did basically nothing" to address her substance abuse in the year leading up to termination. The court also found that mother's "attempt at sobriety" had occurred "just six days" before the hearing, and until that time,

4

mother had demonstrated the same "lack of sobriety that caused [the] case to be brought to the attention of the [c]ourt."

¶ 13 The juvenile court further found that the child had been adjudicated "well over a year ago" and that "the bottom line" was that the child had "been waiting for 17 months for stability." The court concluded that the "conduct or condition of [mother] render[ed] her unlikely to change within a reasonable period of time for this seven-year-old child" and that termination was in the child's best interests because it would provide the stability she needed.

¶ 14 The record supports these findings.

¶ 15 First, the record supports the juvenile court's findings about the long-term nature of mother's substance use. The substance abuse evaluator testified that although mother denied using methamphetamine and fentanyl at the time of her 2022 evaluation, she admitted that she had used these drugs before 2019. Mother testified that she was taking oxycodone pills as far back as 2017 and that when her mother passed away, her addiction "got worse." The caseworker testified that mother tested positive for methamphetamine and fentanyl in September or October 2022. The caseworker's report, which was admitted as evidence during the

5

hearing, stated that mother gave birth to a baby whose umbilical cord was positive for the same drugs in November 2023. And, while mother did not provide a second urinalysis test until January 2024, that test was positive.

¶ 16  Second, the record supports the juvenile court's findings about mother's lack of progress during the proceedings. Over a year passed between the adoption of mother's treatment plan and the termination hearing. The caseworker testified that although mother completed two substance abuse evaluations, she had not engaged in any of the recommended treatment by the first day of the termination hearing. The caseworker also stated that throughout the case, mother had not used the resources the Department provided or taken steps to attain stable employment and housing. The caseworker opined that on the date of the hearing, mother's parenting was not better than it was at the beginning of the case and that mother remained unable to provide "the stability and parental care that [the child] need[ed]."

¶ 17  It is true, as mother points out, that on the second day of the hearing, which occurred about a week after the first, she testified that she had entered inpatient treatment and had "six days of

sobriety." She also stated that her new treatment providers would help her clear her warrants and find a sober living facility after she completed her treatment. But the juvenile court was not required to attribute more weight to the more recent evidence of mother's progress. *See People in Interest of A.J.L.*, 243 P.3d 244, 252 (Colo. 2010) (attributing more weight to more recent evidence may be appropriate in some instances, but doing so is within a juvenile court's discretion). Thus, we reject mother's argument that the court erred by denying her more time based on her recent engagement in treatment and her plan for future stability, particularly given the evidence that mother did not engage in treatment or demonstrate stability for most of the case.

¶ 18    Mother also argues that the court should have allowed her more time because she had a strong bond with the child. Indeed, the visitation provider testified that family time typically went well and that the child was bonded to mother. But mother does not explain how the evidence of her bond with the child negates the evidence showing that mother was not sober throughout the proceedings and did not attempt to address her substance abuse issues until after the termination hearing had already started.

¶ 19 Finally, mother argues that the court should have given her more time because the child was already in a permanent placement and thus, would not have been negatively impacted by delaying termination. But at the time of termination, the child had been out of the home for seventeen months, and the caseworker testified that paternal grandmother preferred adoption because she believed it would provide stability for the child. The caseworker opined that permanency via termination and adoption was in the child's best interests. Thus, although there may be evidence indicating that the child would have remained in the same placement even if the court had given mother more time, there is also evidence supporting the court's finding that allowing more time was not in the child's best interests because it would have delayed the stability the child needed. As noted, we cannot reweigh the evidence or substitute our judgment for that of the juvenile court. *S.Z.S.*, ¶ 29.

¶ 20 In sum, the juvenile court found that mother could not become fit within a reasonable time by considering the evidence showing mother's partial compliance and weighing it against the contrary evidence and the child's needs. Because the record supports the court's finding, we decline to disturb the judgment.

## III. Disposition

¶ 21    The judgment is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.